IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**THOMAS B. SIMPSON,**

    **Plaintiff,**

**v.**                                                           **Civil Action No. 3:23cv32**

**GLENN YOUNGKIN,** *et al.,*

    **Defendants.**

## MEMORANDUM OPINION

Thomas B. Simpson, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] By Memorandum Order entered on October 18, 2023, the Court directed Simpson to file a Particularized Complaint. (ECF No. 12.) In the Memorandum Order, the Court warned Simpson that if he failed to submit an appropriate Particularized Complaint that comported with the joinder requirements set forth in each Memorandum Order, the Court would drop all defendants not properly joined with the first named defendant. (ECF No. 12, at 2–3.)[2] Simpson filed a thirty-seven-page Particularized Complaint with an additional thirty-one pages of attachments. (ECF No. 13.) The matter is before the Court for evaluation pursuant to

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation from Simpson's submissions and omits any emphasis.

28 U.S.C. §§ 1915(e)(2) and 1915A, Federal Rule of Civil Procedure 20(a),[3] and Simpson's compliance with the Court's October 18, 2023 Memorandum Order.

## I. Preliminary Review

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980

---

[3] Federal Rule of Civil Procedure 20(a) provides:

> **(2) Defendants.** Persons . . . may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint.

*See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Joinder

The Federal Rules of Civil Procedure place limits on a plaintiff's ability to join multiple defendants in a single pleading. *See* Fed. R. Civ. P. 20(a). "The 'transaction or occurrence test' of [Rule 20] . . . 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). "But, Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'" *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting *Lovelace v. Lee*, No. 7:03CV00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007)). "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" *Id.* (quoting *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007)).

In addressing joinder, the Court is mindful that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This impulse, however, does not provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Thus, "[a] buckshot complaint that would be rejected if filed by a free person—

4

say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." *George*, 507 F.3d at 607.

"The Court's obligations under the PLRA include review for compliance with Rule 20(a)." *Coles v. McNeely*, No. 3:11CV130, 2011 WL 3703117, at *3 (E.D. Va. Aug 23, 2011) (citing *George*, 507 F.3d at 607).

> Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that these complaints have produced but also to ensure that prisoners pay the required filing fees.

*Id.* (citing 28 U.S.C. § 1915(g); *Showalter v. Johnson*, No. 7:08CV00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009)).

### III. Summary of Allegations and Claims

In his Particularized Complaint, Simpson names the following fourteen individuals as Defendants: Glenn Youngkin, the Governor of Virginia; Jason Miyares, the Attorney General of Virginia; Chadwick Dotson, the current Director of the Virginia of Corrections ("VDOC"), Harold W. Clarke, the former Director of the VDOC; Robert Mosier, the Secretary of Public Safety and Homeland Security; Tikki Hicks, the former Warden of Haynesville Correctional Center ("HCC"); Tony Darden, the current Warden at HCC; Brian Dawson, the Virginia Correctional Enterprise Manager at HCC; Leonard Levin, a former doctor in the HCC medical department; S.C. King, an investigator at HCC; Captain D.C. Jackson, an HCC employee; S.W. Allen, the Hearing Officer at HCC; Major A. White, an HCC employee; and Unit Manager Dobyns, an employee of HCC. (ECF No. 13, at 1–2.) Simpson's Particularized Complaint appears to be a general airing of grievances during his incarceration from the start of the

COVID-19 pandemic in 2020 until he filed his Particularized Complaint in November of 2023. The Particularized Complaint is rambling, repetitive, and contains a lengthy timeline of events and information that is not particularly necessary or useful for the disposition of his claims.

Specifically, Simpson first has a "STATEMENT OF FACTS" section that is thirteen pages in length. (ECF No. 13, at 2–14.) Simpson next has a section called "LEGAL CLAIMS" wherein he first appears to summarize his claims, then he identifies the Eighth Amendment[4] (ECF No. 13, at 15), subsequently has a section called "Causation and Injuries," (ECF No. 13, at 16–17), and then, finally sets forth five claims. (ECF No. 13, at 17–29.) Simpson next has a section that he labels "Retaliation by campaign of Harassment," and identifies the First Amendment.[5] (ECF No. 13, at 29.) Underneath each claim is a lengthy discussion of facts and arguments with titles such as, "Deprivation of Basic Human Needs/Objective Evidence," "Causal Connection," "Deliberate Indifference/Subjective Evidence," "Exhaustion of Legal Remedies." (ECF No. 13, at 17–20.) Although Simpson initially only identifies the First and Eighth and Amendment, the Court notes that several of his claims are brought pursuant to the Fourteenth Amendment.[6] In his Particularized Complaint Simpson raises the following claims for relief recited here verbatim:

| | |
|---|---|
| Claim One: | "That Tikki Hicks, Harold W. Clarke, and Brian Dawson provided Plaintiff with unsafe prison conditions by failing to provide Plaintiff with six feet social distancing living space which caused Plaintiff to contract the COVID-19 virus, violating Plaintiff's right protecting him |

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[6] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

6

|  |  |
|---|---|
|  | from cruel and unusual punishment under Eighth and Fourteenth Amendment of the United States Constitution." (ECF No. 13, at 17.) |
| Claim Two: | "The unsafe prison conditions Tikki Hicks exposed Plaintiff to by forcing him to sleep on the visitation room concrete floor and Plaintiff being infected with COVID-19 violated Plaintiff's rights and constituted cruel and unusual punishment under the Eighth and Fourteenth Amendment to the United States Constitution." (ECF No. 13, at 20). |
| Claim Three: | "The physical, mental, psychological, and emotional anguish and injury caused by Brian Dawson grossly effected on the Plaintiff by tripling Plaintiff's workload as a post-COVID long haul ward of the state violated Plaintiff's rights and constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment rights of the United States Constitution and First Amendment violation for retaliation when Plaintiff filed a grievance or written complaint." (ECF No. 13, at 22.) |
| Claim Four: | "The unsafe prison condition by Tikki Hicks in gross negligently housing Plaintiff in 2B dorm where fungus growth was detected and the deliberat[e] indifference to Plaintiff['s] medical needs by Leonard Levin['s] refusal and failure to prescribe him Diflucan as a COVID-19 long haul ward of the state with fungus infection violated Plaintiff's right[s] and constituted cruel and unusual punishment under the Eighth Amendment and Fourteenth Amendment of the United States Constitution." (ECF No. 13, at 23.) |
| Claim Five: | "The unsafe prison conditions of Glenn Youngkin, Jason Miyares, Robert Mosier, Harold W. Clarke, and Chadwick Dotson violates Plaintiff's rights and constitutes cruel and unusual punishment under the Eighth Amendment and Fourteenth Amendment of the United States Constitution." (ECF No. 13, at 27.) |
| Claim Six: | "Captain D.C. Johnson is liable unto Plaintiff in his individual/personal and official capacity for violating Plaintiff's First Amendment right to free speech and expression and to be free from wrongful interference and unlawful retaliation for the exercise of such rights, and Fourteenth Amendment right violation of association and companionship." (ECF No. 13, at 29.) |
| Claim Seven: | "S.C. King, Captain D.C. Jackson, S.W. Allen, Major A. White, Unit Manager Dobyns are liable unto Plaintiff in their individual/personal and official capacity for violating Plaintiff['s] First Amendment right and Article 19 of the United Nation's Declaration of Human Rights to free speech and expression and to be free from wrongful interference |

7

and unlawful retaliation for exercise of such rights." (ECF No. 13, at 30.)

Simpson asks for what he calls, "Injunctive Relief," and provides a long list of demands. (ECF No. 13, at 34–35.) In his original Complaint, Simpson also asked for unspecified monetary damages. (ECF No. 1, at 20.)

## IV. Dismissal of Improperly Joined Claims

The Court now proceeds with the analysis outlined in the October 18, 2023 Memorandum Order. (*See* ECF No. 12, at 2–3.) The first named defendant in the body of the Particularized Complaint is Glenn Youngkin. (ECF No. 13, at 4.) Youngkin is named in Claim Five with Jason Miyares, Robert Mosier, Harold W. Clarke, and Chadwick Dotson. (ECF No. 13, at 27.)[7] Claim Five alleges that "the unsafe prison conditions of" Youngkin, Miyares, Mosier, Clarke, and Dotson amount to cruel and unusual punishment. (ECF No. 13, at 27.) Accordingly, the Court will proceed with the analysis it explained in the October 18, 2023 Memorandum Order,

---

[7] Of the five defendants, only Harold Clarke is named in another claim, Claim One. As explained in conjunction with the analysis of Claim Five below, the allegations against Defendants Clarke are too vague and conclusory to state a claim for relief or to show that Defendant Clarke was personally involved in the deprivation of Simpson's Eighth Amendment rights. Simpson may not name a defendant who has no personal involvement in an underlying claim to attain the joinder of his claims. *Cf. Jackson v. Olsen*, No. 3:09cv43, 2010 WL 724023, at *3 (E.D. Va. Mar. 1, 2010) (citations omitted) (explaining that a Plaintiff cannot satisfy joinder requirements "with conclusory allegations of a conspiracy"); *Salley v. Sec'y Penn. Dep't of Corr.*, 565 F. App'x 77, 80, 81–82 (3rd Cr. 2014) (explaining that bare allegations of a vast conspiracy is inadequate to permit joinder of unrelated claims when plaintiff fails to specify any personal involvement on the part of a defendant). Because Defendant Clarke was not personally involved in the conduct alleged in Claim Five, it was improper for Simpson to name him in that claim. The Court will not permit joinder of Claim One based solely on the fact that Simpson named Defendant Clarke in both claims. *See Dobson v. Clarke*, No. 3:22CV132, 2023 WL 5109538, at *4 n.4 (E.D. Va. Aug. 9, 2023) (refusing to permit joinder of claims where defendants who were named in more than one claim were not personally involved in alleged conduct).

and "the Court will drop all defendants not properly joined with the first named defendant."[8] (*See* ECF No. 12, at 3.)

As a preliminary matter, the manner in which Simpson has pled his Particularized Complaint requires the Court to weed through excessive verbiage and unnecessary factual information in order to distill the claims to their essence. Simpson also repeats factual information from other claims that is entirely unrelated to the main component of that individual claim. Moreover, in several instances Simpson has alleged more than one disparate claim for relief under his identification of a "Claim," or alleged underlying facts that are not at all related to his statement of the claim, complicating the Court's joinder analysis.

As best the Court can discern, Claim Five alleges that a policy of mass incarceration in 2022 and 2023, in the "post COVID-19 era," led to cruel and unusual living conditions in VDOC facilities because many of the inmates could have been released, which according to Simpson, would have alleviated overcrowding. (ECF No. 13, at 27–29.) Claim One alleges that in 2020, HCC officials subjected Simpson to cruel and unusual punishment because they failed to separate inmates by six feet and Simpson contracted COVID-19. (ECF No. 13, at 17–20.) Claim Two alleges cruel and unusual punishment because Simpson was forced to sleep on a concrete floor after he contracted COVID-19. (ECF No. 13, at 20–21.) Claim Three alleges that Simpson's workload was tripled. (ECF No. 13, at 22–23.) Claim Four alleges deliberate indifference to Simpson's medical needs because he contracted a fungus that was then not treated in the manner Simpson desired. (ECF No. 13, at 23–26.) Claims Six and Seven allege violations

---

[8] "Such a procedure fosters the objectives of the Rules of Civil Procedure[ ] of expediting the resolution of disputes, without further squandering scarce judicial resources on 'disputes that are not structurally prepared to use those resources efficiently.'" *Jackson*, 2010 WL 724023, at *8 n.10 (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006)).

of the First Amendment freedom of speech, the Fourteenth Amendment right to "association and companionship," and retaliation. (ECF No. 13, at 29–30.)

Simpson repeats *ad nauseam* that inmates were housed too closely during the COVID-19 pandemic and that he purportedly has long haul COVID-19 and has or had a fungal infection. Simpson appears to suggest that these three facts are somehow related to all of his claims. However, these disparate facts are not sufficient to make his claims properly joined. That his claims stem from experiences during his incarceration in the HCC do not make them properly joined.

Thus, Claims One, Two, Three, Four, Six, and Seven, are different types of claims from Claim Five, alleging different conduct, on different dates, against different defendants. Thus, it is apparent that Simpson has failed to articulate a common question of law and fact for all of the named defendants, and that Simpson's various causes of action do not arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Instead, Simpson has submitted the sort of "mishmash of a complaint" that the rules governing joinder aim to prevent. *Jackson*, 2010 WL 724023, at *7 (quoting *George*, 507 F.3d at 607). As such, permitting the joinder of Claims One, Two, Three, Four, Six, and Seven will not promote the objectives of Rule 20 or judicial efficiency. *See id.* at *8 n.10.

For the reasons set forth above, Simpson's Particularized Complaint "comprises multiple lawsuits, rather than one suit." *Id.* at *8 (quoting *Canada v. Ray*, No. 7:08cv00219, 2009 WL 2448557, at *2 (W.D. Va. Aug. 10, 2009)).[9]

---

[9] Through the PLRA, Congress sought to ensure "that the flood of nonmeritorious [prisoner] claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203 (2007) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The requirement that inmates must pay the full filing fee for each separate suit, *see* 28 U.S.C. § 1915(b)(1), is one of the PLRA's key "reforms designed to filter out the bad claims and facilitate consideration of the good." *Id.* at 204. To allow an inmate, such as Simpson, to

Accordingly, Claims One, Two, Three, Four, Six, and Seven will be DISMISSED WITHOUT PREJUDICE because they are improperly joined. Defendants Hicks, Dawson, Levin, King, Jackson, Allen, White, and Dobyns will be DISMISSED from the action because the claims against them are improperly joined. Defendant Darden will be DISMISSED because he was not named in any claim. Thus, the action proceeds solely on Claim Five against Defendants Youngkin, Miyares, Mosier, Clarke, and Dotson ("Defendants"), to which the Court now turns.

### V. Eighth Amendment

#### A.  Simpson's Allegations in Claim Five

Claim Five is hardly clear or precise. Simpson alleges as follows:

148.  The Defendants placed Plaintiff in serious and extreme conditions because he is suffering from COVID-19 long haul, and their official regulations are prejudiced by their individual support of the inhumane system of mass incarceration resulting in overcrowding of prisons, causing unsanitary conditions, depriving Plaintiff of the basic human right of six feet living space, in the post-COVID-19 era.

149.  Eighth Amendment objective standard can be met by showing that Plaintiff is deprived of a basic human need. By showing officials knew he was deprived, but ignore[d] his conditions, satisfies [the] subjective evidence prong.

150.  Prison conditions can violate the Plaintiff's rights if he can show that the conditions put him at serious risk for injury in the future.

a. Deprivation of Basic Human Needs/Objective Evidence:

151.  Prison conditions in VDOC security level 2 at HCC could/and does seriously affect Plaintiff's health because he is deprived of a sanitary six feet living[]space. He is consistently threatened by airborne pathogens because he cannot control the sanitation of surface or air quality by having 3 other individuals within 3ft, and 2 other[s] within 5ft of him. His past COVID-19 infection injuries cause mental and emotional injury. Six feet living conditions are a basic human right exposed by the COVID-19 pandemic, which virus is still a serious threat due [to] its long haul harm. The best way to avoid COVID-19 long haul is to not have

---

"package many lawsuits into one complaint exempts him from such a cost, benefit analysis and thus undercuts the PLRA." *Canada*, 2009 WL 2448557, at *3.

11

caught the virus at all. The virus caused HCC compound pandemic twice a year, every year since 2020.

152. Plaintiff's unfortunate COVID-19 long haul means a common cold isn't just a common cold, as well as the flu, RSV, or diseases caused by airborne pathogens or chronic illness.

153. Plaintiff is a ward of the state and Defendants are officials who constantly put him in serious and harmful prison conditions, violating his constitutional rights because he is deprived of controlling air and surface 6 ft around him, revealing the inhumanity of mass incarceration.

b. Deliberate Indifference:

154. The Defendant know or should have reason to know that COVID-19 causes serious harm and long-term effects and that six feet social distancing is the best defense preventing infection.

155. The Defendants know or should have reason to know individuals in VDOC security level 2 do not afford individuals the right to six feet living space, which conditions are serious and extreme for COVID-19 long haul patients in chronic care.

156. The Defendants knew or should have reason to know that: (1) HCC places 70+ individuals in a 3750 ft$^2$ living area with 48,300 ft$^3$ of air space, which is the perfect [breeding] ground, easily spreading airborne pathogens and that the common cold is no longer just the common cold for COVID-19 long haul patients; and (2) from February 2021 to currently, Plaintiff has suffered as a COVID-19 long haul patient, yet his living conditions are grossly neglected.

157. That Defendants openly, purposefully, deliberately, and mercilessly support mass incarceration, which science negate[s], and went as far as to prevent Va. Code § 53.1-202.3 from fully going into [e]ffect, which would have freed up the living-area space affording security level 2 six feet living-space.

(ii) Restrictive Regulations Cause Unsafe Prison Conditions

158. First, Defendants maliciously intended to prevent a "de-carceration' law, Va. Code § 53.1-202.3[10] from fully going into effect on July 1, 2022, telling

---

[10] The United States District Court for the Western District of Virginia recently explained the history of this law as follows:

> In 1994, the Virginia General Assembly enacted legislation establishing the Earned Sentence Credit ("ESC") system for inmates convicted of a felony offense committed on or after January 1, 1995. *See* Va. Code Ann. §§ 53.1-202.2–53.1-202.4. The system allows inmates to earn sentence credits "through adherence to

disappointed inmate[s] days before on Father's Day. The administration ran on a merciless hate campaign against prisoners, supporting the failed decaying system of mass incarceration. JASON MIYARES revealed as much when he stated to James Bacon of Fredericksburg.com that "we're trying to make the best out of a horrific situation," referring to § 53.1-202.3 [e]ffective date on July 1, 2022, when

---

> rules prescribed pursuant to § 53.1-25, through program participation as required by §§ 53.1-32.1 and 53.1-202.3, and by meeting such other requirements as may be established by law or regulation." *Id.* § 53.1-202.2. Prior to July 1, 2022, inmates could earn a maximum of 4.5 sentence credits for every 30 days served. *See id.* § 53.1-202.3 (effective until July 1, 2022).
>
> In 2020, the General Assembly revised the ESC system by amending Virginia Code § 53.1-202.3. The statutory amendments created a two-tier system pursuant to which a "maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence" for certain enumerated offenses, including particular violent crimes and sex offenses. Va. Code Ann. § 53.1-202.3(A). In contrast, inmates who are serving a sentence for "any offense other than those enumerated in subsection A" (referred to herein as a "non-enumerated offense"), and who satisfy other statutory criteria, may earn as many as 7.5 or 15 days of sentence credits for every 30 days served. *Id.* § 53.1-202.3(B); *see also Prease v. Clarke*, 888 S.E.2d 758, 759 (Va. 2023) (describing the two-tier system created by the revised statutory scheme).
>
> "The implementation of this two-tiered system was delayed until July 1, 2022." *Id.* at 760 (citing 2020 Va. Acts, Spec. Sess. I, Ch. 50 (specifying that "the provisions of this act, other than the provisions of the second enactment of this act, shall become effective on July 1, 2022")). The 2020 legislation provided that the amended provisions of § 53.1-202.3 "shall apply retroactively to the entire sentence of any person who is confined in a state correctional facility and participating in the earned sentence credit system on July 1, 2022." 2020 Va. Acts, Spec. Sess. I, Ch. 50. Before the two-tiered system became effective on July 1, 2022, however, the General Assembly approved a biennial budget amendment proposed by the Governor that limits the ability of inmates serving sentences for both enumerated and non-enumerated offenses to earn enhanced sentence credits. That amendment (Amendment 19), which was added to the biennial budget as Item 404(R)(2), provides as follows:
>> Notwithstanding the provisions of § 53.1-202.3, Code of Virginia, a maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence that is concurrent with or consecutive to a sentence for a conviction of an offense enumerated in subsection A of § 53.1-202.3, Code of Virginia.
>
> 2022 Va. Acts, Spec. Sess. I, Ch. 2, § 1-113, Item 404(R)(2). The budget provisions, including Item 404(R)(2) (the "Budget Amendment"), took effect on July 1, 2022, and remain in effect until June 30, 2024. *See id.* §§ 4-13.00, 4-14.00.

*Hoglan v. Youngkin*, No. 7:22–cv–00460, 2023 WL 5214122, at *1–2 (W.D. Va. Aug. 14, 2023) (footnotes omitted). Unlike the Plaintiff in *Hoglan*, Simpson does not allege that he was entitled to release under this provision, just that other unidentified inmates would be.

individuals would gain their liberty and civil right[s] back. The Budget Amendment 19 was meant to punish individuals who earned their right to liberty, preventing 4,500 plus inmates from being release[d] within 2 months. Such prejudice deprived Plaintiff of his basic human right to six feet living space, making Defendants liable.

159.   Secondly, the Budget Amendment 19 achieved no legitimate goal except mass incarceration. Financially, it would be less expensive to free individuals who earned their liberty and had a personal interest in §53.1-202.3 July 1, 2022 [e]ffective date, then to house them at $30,000 plus every body/year. Budget Amendment 19 had no purpose but to punish and promote mass incarceration which violates individual[']s civil rights. The regulation was an exaggerated response to inmates being released early and the administration's concern of the new ESC-2 effective date of July 1, 2022, because they looked for [an] unconstitutional way to continue to illegally detain individuals. However, it also ignored the new post COVID-19 long haul era, exposing how mass incarceration violates basic human rights.

160.   Defendants have violated Plaintiff's constitutional rights by housing him in serious and extreme inhumane conditions by failing to afford him safe and sanitary living-space conditions by adjusting new levels to what would now be overcrowding, post-COVID-19 era, constituting cruel and unusual punishment. The Defendants maliciously intended to further punish inmates through restrictive regulations of Budget Amendment 19, which failed to provide safe conditions for Plaintiff's COVID-19 long haul and chronic health, depriving him of his constitutional protection and depriving individuals of their personal interest of liberty.

(ECF No. 13, at 27–29 (internal citations and emphasis omitted).)

### B.   No Personal Involvement Alleged

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly,

the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations"). Here, Simpson has failed to allege sufficient facts that suggest each named Defendant was personally involved in the violation of Simpson's rights in Claim Five. That deficiency alone warrants the dismissal of his claim. Moreover, as explained more fully below, Simpson has failed to plausibly allege sufficient facts to support an Eighth Amendment violation by any of the Defendants.

### C. **Eighth Amendment Law**

To state an Eighth Amendment claim,[11] an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical

---

[11] Although Simpson contends that Defendants also violated the Fourteenth Amendment in Claim Five, the Eighth Amendment governs his claim of cruel and unusual living conditions. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *see Lewis*, 523 U.S. at 842 ("[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more general notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion))).

15

or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

16

D.   **Analysis of Claim Five**

In Claim Five, Simpson contends that: "The unsafe prison conditions of Glenn Youngkin, Jason Miyares, Robert Mosier, Harold W. Clarke, and Chadwick Dotson violates Plaintiff's rights and constitutes cruel and unusual punishment under the Eighth Amendment and Fourteenth Amendment of the United States Constitution." (ECF No. 13, at 27.) As noted previously, Claim Five alleges that the policy of mass incarceration in 2022 and 2023, in the "post COVID-19 era" led to cruel and unusual living conditions in VDOC facilities because many of the inmates could have been released alleviating purported overcrowding. (ECF No. 13, at 27–29.) Claim Five is difficult to unravel, extremely tenuous, and requires several leaps in logic and causation. Broken down, Simpson initially faults Defendants for a law passed on July 1, 2022, that was amended, apparently, to disallow early release for as many inmates as Simpson initially believed would be released. Simpson believes the failure to release this allegedly "4,500 plus inmates" is the source of his being housed within six feet of other inmates. (ECF No. 13, at 28.) Simpson contends that this is cruel and unusual punishment. Claim Five can be dismissed for several reasons.

Here, Simpson simply has failed to allege facts that indicate any of the defendants "subjectively recognized a substantial risk of harm" to Simpson and further recognized that his or her "actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2). First, Simpson never identifies how any individual Defendant was personally involved in the deprivation of his Eighth Amendment rights. Instead, throughout Claim Five, Simpson merely indicates that "Defendants" took certain actions. However, that is insufficient to state a claim an Eighth Amendment claims against these individuals. *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) ("Vague references

to a group of defendants, without specific allegations tying the individual defendants to the alleged unconstitutional conduct'" fail to support a claim for relief against the individual defendants." (citing *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003))); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." (citing *U.S. ex rel. Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968))).[12] For that reason alone, Claim Five may be dismissed.

Second, with respect to Defendants Clarke, Dotson, Miyares, and Mosier, Simpson has failed to allege sufficient facts to suggest that any of these Defendants were personally involved in the passage of an amendment to a Virginia law that changed how many inmates qualified for early release. Only the legislative body of Virginia, the General Assembly, and the Governor would have any involvement in legislation or the amendment process. *See Hoglan*, 2023 WL 5214122, at *1–2 (explaining legislative history of Amendment 19 and the code section it amended). Thus, Simpson's claim fails at the outset against these Defendants. For this reason, Simpson fails to state a claim against Defendants Clarke, Dotson, Miyares, and Mosier. Accordingly, any claim against Defendants Clarke, Dotson, Miyares, and Mosier will be DISMISSED.

With respect to Defendant Youngkin, although he may have been involved in the legislative process, Simpson fails to allege facts indicating that, by amending a bill to change

---

[12] The only Defendant named in the body of Claim Five is Jason Miyares, who according to Simpson, noted to a reporter, "we're trying to make the best out of a horrific situation." (ECF No. 13, at 28.) The Court fails to discern, and Simpson fails to explain, what this means, much less how it shows that Defendant Miyares was personally involved in the alleged unconstitutional conduct.

early release qualifications, Defendant Youngkin violated Simpson's Eighth Amendment rights. Simpson alleges that the change in early release law led to more inmates remaining in the VDOC which Simpson considers overcrowded because he is housed within six feet of other inmates. Then, Simpson claims that living within six feet of other inmates is cruel and unusual punishment. However, Simpson does not allege an injury, much less "a serious or significant physical or emotional injury" resulting from the bill's passage on July 1, 2022. *De'Lonta*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). At most, Simpson contends that he "is consistently threatened by airborne pathogens because he cannot control the sanitation of surface or air quality by having 3 other individuals within 3ft, and 2 other[s] within 5ft of him." (ECF No. 13, at 27.) Simpson fails to plausibly allege a serious or significant physical or emotional injury resulting from the passage of the amended bill. Accordingly, Simpson's claim against Defendant Youngkin will be DISMISSED.[13]

## VI. Conclusion

Defendants Hicks, Dawson, Levin, King, Jackson, Allen, White, and Dobyns will be DISMISSED WITHOUT PREJUDICE. Claims One, Two, Three, Four, Six, and Seven will be

---

[13] Simpson's claim also has a causation issue. "[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citations omitted). Thus, to establish liability under § 1983, Simpson must show that Defendant Youngkin, acting under color of state law, violated Simpson's constitutional rights, "and thereby caused the complained of injury." *Brown v. Mitchell*, 327 F. Supp. 2d 615, 628 (E.D. Va. 2004) (citing *Coppage v. Mann*, 906 F. Supp. 1025, 1035 (E.D. Va. 1995). Here, Defendant Youngkin proposed an amendment to a bill that changed the qualifications for release for some inmates. "[A] policy . . . that is not itself unconstitutional . . . must be independently proven to have caused the violation. Proof merely that such a policy . . . was 'likely' to cause a particular violation is not sufficient; there must be proved at least an 'affirmative link' between policy . . . and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Spell v. McDaniel*, 824 F.2d 1380, 1387–88 (4th Cir. 1987) (citation omitted). Simply put, Simpson fails to plausibly suggest a causal connection between Defendant Youngkin's amendment to a law and Simpson's alleged injury of being housed within six feet of other inmates at HCC.

DISMISSED WITHOUT PREJUDICE because they are improperly joined. Defendant Darden will be DISMISSED because he was not named in any claim. Claim Five against Defendants Youngkin, Miyares, Mosier, Clarke, and Dotson will be DISMISSED for failure to state a claim and as frivolous. The Clerk will be DIRECTED to note the disposition for the purposes of 28 U.S.C. § 1915(g).

    An appropriate Order will accompany this Memorandum Opinion.

Date: 3/5/2024  
Richmond, Virginia

/s/  
M. Hannah Lauck  
United States District Judge